UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

JANICE RENEE PUGH,

Debtor.

Case No. 13-23483

Chapter 13

---

MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO INTERNAL
REVENUE SERVICE'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

---

The United States, on behalf of the Internal Revenue Service, filed a motion for an order modifying the automatic stay imposed by 11 U.S.C. § 362(a)(7), to allow the IRS to set off the debtor's postpetition claim to a tax overpayment against prepetition priority tax liabilities of the debtor due the IRS, pursuant to 11 U.S.C. § 553(a).  The debtor opposed the motion on the grounds that the tax obligation was to be paid in full through her chapter 13 confirmed plan.  The parties provided a summary of their arguments in their pleadings, as well as at a preliminary hearing held on April 15, 2014.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), and the Court has jurisdiction under 28 U.S.C. § 1334.  This decision constitutes the Court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.  For the reasons stated below, the motion for relief from the automatic stay is granted.

BACKGROUND

The debtor, Janice Pugh, filed a bankruptcy petition seeking relief under chapter 13 on March 26, 2013.  The debtor's original plan, with modifications, was confirmed on July 30, 2013, and provided that she "would retain any net federal and state tax refunds received during the term of the plan." (Chapter 13 Plan § 1, filed March 26, 2013).  Sometime postpetition the

debtor's federal tax returns were audited, resulting in a tax liability of $2,623.00 for the 2011 tax year. On November 27, 2013, the debtor filed a proof of claim on the IRS's behalf for the 2011 tax obligation. The IRS subsequently filed an amended claim on January 21, 2014, in the amount of $2,606.73. The debtor filed a federal income tax return for the year 2013, claiming an overpayment in the amount of $1,791.00, which the IRS has not remitted to the debtor.

ARGUMENTS

The debtor asserts that, at the time of the bankruptcy filing, no tax refund for 2013 existed. Therefore, the right to the refund, acquired after the commencement of the case, is property of the estate under 11 U.S.C. § 541(a)(7). Additionally, at the time of the filing, according to the debtor, she did not owe income taxes for 2011; the obligation only arose after her returns were audited. The IRS's proposal for offset is more inconvenient to the debtor than the alternative, specifically paying the priority tax debt through her plan and allowing her to retain her refund when received.[1]

The IRS argues the overpayment amount sought to be offset is not property of the debtor or the estate because section 6402(a) of the Internal Revenue Code provides that in the case of any overpayment, the Service may credit such overpayment against any tax liability, and then refund any balance to the taxpayer. 26 U.S.C. § 6402(a); *see In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001); *In re Gould*, 401 B.R. 415, 423-26 (B.A.P. 9th Cir. 2009); *In re Lyle*, 324 B.R. 128 (Bankr. N.D. Cal. 2005); *In re Rivera*, 345 B.R. 229, 234-38 (Bankr. E.D. Cal. 2005).

---

[1]The debtor, whose income is above the median for the State of Wisconsin, argued she should be able to retain one-half of her refund, presumably under the mistaken impression that her plan required the payment of one-half of tax refunds into the plan, as required for below-median income debtors in this district. The confirmed plan, instead, provided for the debtor's retention of any tax refunds in their entirety. (Chapter 13 Plan § 1, filed March 26, 2013).

2

Unless there is a net amount owing after offset, there is no actual refund to be issued to the debtor. In this case, the amount of the debtor's overpayment for tax year 2013 is less than the amount of the debtor's acknowledged tax liability for tax year 2011. The IRS is to be paid in full on its claim under the terms of the plan and 11 U.S.C. § 1322(a). By offset, the IRS does not improve its position compared with other creditors, nor interfere with the disposable income the debtor has pledged to fund her plan. In contrast, should the IRS's motion be denied, the debtor will receive a windfall that will not benefit the estate or creditors. *Cf. Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20, 116 S.Ct. 286 (1995) (noting there is no point in forcing a creditor to turn over funds it owes the debtor when a right of offset applies).

## DISCUSSION

This Court has been asked to determine whether or not the automatic stay should be lifted to allow the offsetting of a postpetition tax overpayment against a prepetition tax liability.[2] The debtor argues that because the claim was unknown until the postpetition audit of the debtor's 2011 return, it is a postpetition claim, notwithstanding that it was for a prepetition tax year. That argument is without merit. The claim for 2011 taxes arose at the end of 2011 because all of the events triggering liability for those taxes occurred in 2011. The fact that the liability was quantified some time later is immaterial. *See, e.g., In re Luongo*, 259 F.3d 323, 334 (5th Cir. 2001) (citing *Matter of Midland Indus. Serv. Corp.* 35 F.3d 164, 167 (5th Cir. 1994)). Therefore,

---

[2] A tax *overpayment* is the amount a taxpayer pays to the government in excess of her tax liability. It is also subject to the Treasury Offset Program authorizing the Secretary of the Treasury to apply all or part of the tax overpayment to certain other debts, not applicable here, the taxpayer owes to the government. *See* 26 U.S.C. § 6402(a)-(d). A tax *refund*, on the other hand, represents the amount the government returns to the taxpayer when the amount collected exceeds her liability for other tax years and applicable offsets.

the debtor's tax liability is a prepetition claim.

The proposed action by the IRS does not fall within the exception to the automatic stay in 11 U.S.C. § 362(b)(26) because that section relates to the setoff of income tax liabilities and overpayments that are both prepetition. At least some of the overpayment in this case was made by the debtor postpetition.

The proposed setoff by the IRS is not prohibited outside of bankruptcy, and the debtor does not appear to dispute that applicable nonbankruptcy law provides the United States with such setoff rights. Section 6402(a) of the Internal Revenue Code states in relevant part that "[i]n the case of any overpayment, the Secretary [of the Treasury] ... may credit the amount of such overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." 26 U.S.C. § 6402(a). The Treasury Department's regulations mirror this language, granting the IRS and its officials the power to credit any overpayment against "any outstanding liability for any tax." Treas. Reg. § 301.6402-1.

For a creditor to exercise its right of setoff in bankruptcy, there must be a debt owed by the creditor to the debtor, there must be a claim that the creditor has against the debtor, both the debt and the claim must have arisen prepetition, and the debt and the claim must be mutual obligations. 11 U.S.C. § 553. The right of setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Stumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 289 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808 (1913)). Section 553 does not itself create the right of setoff, but instead "merely recognizes and preserves setoff rights that exist under other applicable law, and then only to the extent that the conditions

4

of section 553 are satisfied." Collier on Bankruptcy ¶ 553.01[2] (16th ed. 2014); *see also Miller v. United States*, 422 B.R. 168, 170-71 (W.D. Wis. 2010). When both the tax liability and the tax overpayments arise before the petition, the IRS is allowed to use overpayments to offset the liability without first obtaining relief from the automatic stay. 11 U.S.C. § 362(b)(26).

In this case, however, the liability arose prepetition and most of the overpayment arose postpetition. The offsetting debts are not "mutual" as that term is used in section 553. The IRS steps around section 553's requirement that the debt owed by the creditor to the debtor must arise before the commencement of the bankruptcy case, by arguing there is no obligation whatsoever owed by the IRS to the debtor pursuant to the application of 26 U.S.C. § 6402. The IRS disputes the debtor's assertion her entitlement to a the tax refund is property of the estate, arguing she is not entitled to a refund because there is no net amount owing after the offset.

In analyzing the IRS's right to setoff and the chapter 7 debtor's competing right to exemption in a tax overpayment, the Fifth Circuit found that a tax refund was, in fact, a part of the bankruptcy estate. *In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001). The court, however, held that "under 26 U.S.C. § 6402(a) the debtor is generally only entitled to a tax refund to the extent that her overpayment exceeds her unpaid tax liability." *Id*. Accordingly, because the IRS properly offset the overpayment, and the refund was merely contingent upon the application of the IRS offset procedures, the debtor had no interest in the property remaining in her estate to exempt. *Id*.

There is now a split in the case law. The courts following *Luongo* have held that a tax refund does not vest in the estate until after the Treasury has complied with 26 U.S.C. § 6402(a), leaving only any net amount as part of the estate. *See, e.g., In re Baucom*, 339 B.R. 504, 506-07

5

(Bankr. W.D. Mo. 2006) (debtor only has right to refund after government has credited refund to other underpaid taxes); *In re Pigott*, 330 B.R. 797, 802 (Bankr. S.D. Ala. 2005) (tax overpayment not necessarily create debt due to taxpayer because taxpayer has no right to overpayment until after IRS has exercised its discretionary powers under IRC).

Conversely, other courts have declined to allow the offset of unpaid tax debt against any tax overpayment prior to remitting a refund to the debtors. *See, e.g., In re Vargas*, 342 B.R. 762 (Bankr. N.D. Ohio 2006) (right of setoff provided in IRC did not constitute "cause," per se, to lift stay to effect setoff involving debtor's tax refund); *In re Jones*, 230 B.R. 875 (M.D. Ala. 1999) (IRS's right of setoff under § 553(a) must yield to debtor's right to exempt and protect assets under § 522(c)).

As noted by a recent decision, a debtor's interest in her tax overpayment or right to a refund has not been expressly excluded from the Code's broad definition of "property of the estate" in 11 U.S.C. § 541(b); thus those interests vest in the estate and are subject to the protections of the automatic stay. *In re Sexton*, __ B.R. __, No. 13-70230, 2014 WL 1329260 at *12 (Bankr. W.D. Va. April 1, 2014). In a case involving the offset of a tax overpayment to a non-tax obligation, the *Sexton* court took issue with those decisions that treated the government's right to setoff the same whether the taxpayer was in bankruptcy or not:

> By concluding that a federal collection statute eliminates a property interest, these courts fail to recognize: (1) the interest of the debtor in that overpayment enables the government to credit it on behalf of the debtor; (2) the right of the debtor to challenge the liability against which the government applies the overpayment; (3) the right of the debtor to challenge the amount or proper application of the offset; (4) the right of other creditors to the overpayment; and (5) the right of the debtor herself to the overpayment. The debtor's interest in the overpayment and the debtor's right to a refund are both property interests. Hence, under the broad definition Congress used in section 541(a), these property interests vest in the debtor's bankruptcy estate just as any other interest does. If,

thereafter, the government wants to use the overpayment for a setoff under section 6402, it must first get relief from the stay or act under an applicable exception enumerated in section 362(b).

*Id*. at *14.

There is no definitive precedent in this district. In *Pettibone Corp. v. United States*, 34 F.3d 536 (7th Cir. 1994), the Seventh Circuit held that the action of the United States in continuously netting the chapter 11 corporate taxpayer's underpayments and overpayments in each succeeding tax year, for the purposes of calculating the debtor's total deficiency at the time of the bankruptcy filing, was merely an accounting method, and not the type of "setoff" which is subject to provisions of section 553. Specifically involved were the applications of various loss carry backs. The debtor's confirmed plan provided for full payment of taxes and, at the time of plan confirmation, the obligation of "full payment of taxes" had not yet been quantified. The appellate court held that the plan's "payment in full" provision should be read as an agreement to pay taxes as determined by normal IRS operating procedures which envisioned the netting of underpayments and overpayments about which the debtor complained. The court, however, was analyzing corporate tax situations in which losses might be shifted between years, and several tax years could be open at the same time. In dicta, the court noted that, "[a]n approach based on strict separation between tax periods may work with natural persons," but it did not specifically hold that this is the rule. *Id*. at 539. Furthermore, the court of appeals agreed with the holding of the district court that netting underpayments and overpayments was "an accounting method" and not a setoff contemplated by the bankruptcy code. *Id*. If offsets authorized by 26 U.S.C. § 6402 is an accounting method, it should be applicable to individuals as well.

The bankruptcy court in *In re Ealy*, 392 B.R. 408 (Bankr. E.D. Ark. 2008), *appeal*

Case 13-23483-svk    Doc 31    Filed 05/27/14    Page 7 of 9

*dismissed by* 396 B.R. 20 (B.A.P. 8th Cir. 2008) (IRS appeal dismissed as equitably moot), faced a situation where the requested offset was for postpetition liabilities and overpayments. While section 553 did not apply because of the postpetition nature of the reciprocal debts, the court held that nothing in the Code abrogates the right to setoff. The bankruptcy court then analyzed whether there was cause to lift the stay and determined there was not because the debtor was making timely payments and the IRS was fully secured under the debtor's confirmed plan.

This Court agrees the nonbankruptcy right to setoff continues even after confirmation, as well as with the line of cases holding that 26 U.S.C. § 6402 provides how much of the debtor's *overpayment* in any tax year will result in a *refund* to which she is entitled. *See In re Baucom*, 339 B.R. 504, 506-07 (Bankr. W.D. Mo. 2006) (debtor only has right to refund after government has credited refund to other underpaid taxes); *In re Pigott*, 330 B.R. 797, 802 (Bankr. S.D. Ala. 2005) (tax overpayment does not necessarily create debt due to taxpayer because taxpayer has no right to overpayment until after IRS has exercised its discretionary powers under IRC); *In re Lyle*, 324 B.R. 128 (Bankr. N.D. Cal. 2005) (debtor had no right to refund until offset, which exceeded overpayment, was applied).

The cases cited relate to individuals, and the dicta in *Pettibone* does not compel a contrary result. The *Pettibone* court noted that the debtor's chapter 11 plan provided for full payment of the IRS claim, and netting overpayments and liabilities to arrive at the claim upon filing was consistent with ordinary tax computation procedures. 34 F.3d at 539. There is no indication of whether a plan that negated these procedures could have been confirmed, but since netting was allowed as an accounting procedure prior to determination of the debtor's entitlement, probably not. Here, the debtor has argued that payment of priority taxes over the 60

8

month course of the plan should take precedence, which is inconsistent with the IRS's statutory setoff provisions. However, it must be noted that unlike *Ealy*, 392 B.R. 408, the debtor's plan makes no provision for priority taxes, although that could be amended. The court in *In re Rivera*, 345 B.R. at 233, held that section 1327 (effect of confirmation) does not trump section 553 (recognizing nonbankruptcy right of setoff), and this Court holds that it does not trump the IRS's procedures under 26 U.S.C. § 6402(a) for determining the amount of a refund. Thus, a plan cannot force payment of a refund unauthorized by tax law to the debtor while taxes are unpaid.

The stay will be modified to allow the IRS to offset the debtor's postpetition tax overpayment for 2013 against the debtor's prepetition 2011 tax liability. A separate order consistent with this decision will be entered.

May 27, 2014

Margaret Dee McGarity
United States Bankruptcy Judge

9